# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNETTE SANCHEZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | No. 2:18-CV-1144-TLN-DMC<br><br>FINDINGS AND RECOMMENDATIONS |

　　　　Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pending before the court are the parties' briefs on the merits (ECF Nos. 16 and 17).

　　　　The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole,

1

including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the court recommends the Commissioner's final decision be affirmed.

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). The sequential evaluation proceeds as follows:

Step 1     Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

Step 2     If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;

Step 3     If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;

///

| | | |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on March 4, 2015. See CAR 18.[1] In the application, plaintiff claims disability began on December 17, 2012. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on March 2, 2017, before Administrative Law Judge (ALJ) G. Ross Wheatley. In an April 25, 2017, decision, the ALJ concluded plaintiff was not disabled through December 31, 2016 – the date last insured – based on the following relevant findings:

1. Through the date last insured, the claimant had the following severe impairment(s): degenerative disc disease of the lumbar spine, obesity, fibromyalgia, a history of deep vein thrombosis, varicose veins, chronic venous insufficiency, type II diabetes mellitus, bilateral carpal tunnel syndrome status post right carpal tunnel release, cervical radiculopathy, and peripheral neuropathy of the bilateral lower extremities;

2. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled an impairment listed in the regulations;

3. Through the date last insured, the claimant had the following residual functional capacity: the claimant could have performed light work; she could stand and/or walk for 6 hours during an 8-hour day with normal breaks; she could sit 4-6 hours during an 8-hour day with normal breaks; she could perform all other postural activities on no more than an occasional basis; she was limited to frequent bilateral handling, that is, gross manipulation; she was limited to frequent feeling and fingering, that is, fine manipulation of items no smaller than the size of a paper clip; the claimant was limited to frequent bilateral feeling; and

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, through the date last insured the claimant was capable of performing her past relevant work as a cosmetologist and beauty shop manager, and there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

See id. at 21-32.

After the Appeals Council declined review on April 3, 2018, this appeal followed.

///

---

[1] Citations are the to the Certified Administrative Record (CAR) lodged on November 29, 2018 (ECF No. 13).

## III. DISCUSSION

In her opening brief, plaintiff contends the ALJ erred with respect to evaluation of the medical opinion evidence. "The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). The ALJ errs by not explicitly rejecting a medical opinion. See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another. See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources. 20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Social workers are not considered an acceptable medical source. See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010). Nurse practitioners and physician assistants also are not acceptable medical sources. See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016). Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so. See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th

Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

///
///
///
///

In this case, plaintiff challenges the ALJ's evaluation of the opinions of consultative examiner Dr. Ali, treating physicians, Drs. Thakur[2] and Purewal, as well as the opinions of physician's assistant (PA), David Anslinger.

**A.  Dr. Ali**

1.  The ALJ's Analysis

As part of his analysis at Step 4, the ALJ considered the opinions of consultative examiner, Dr. Shahid Ali. The ALJ stated:

> As for the opinion evidence, on May 29, 2015, Shahid Ali, M.D., Consultative Examiner (CE), opined that the claimant was capable of standing and/or walking for 4-6 hours. She had no sitting limitations. She could lift and/or carry 20 pounds occasionally and 10 pounds frequently. The claimant could occasionally climb, balance, stoop, kneel, crouch, and crawl. She had no reaching, handling, fingering, or feeling limitations. The claimant would not require environmental restrictions (Ex. 4F/4).
>
> The undersigned gives great weight to this opinion as it is consistent with the longitudinal evidence, which showed that the claimant maintained normal gait, sensation, coordination, and range of motion with no objective evidence of atrophy or weakness (Ex. 2F/34, 3F/16, 14F/4, 14F/20-21, 15F/30, and 17F/86-87). However, the undersigned added manipulative limitations to account for limitations related to carpal tunnel syndrome (Ex. 17F/83-84).

CAR 30.

2.  Plaintiff's Contentions

According to plaintiff, even though the ALJ gave Dr. Ali's opinion great weight, the ALJ nonetheless erred by misstating the doctor's opinion with respect to plaintiff's ability to stand and walk. Plaintiff asserts:

> The ALJ assigned great weight to Dr. Ali's opinion and wrote that Dr. Ali "opined that the claimant was capable of standing and/or walking for 4-6 hours." Tr. 30. The ALJ relied on this misstatement to formulate Ms. Sanchez's residual functional capacity assessment (Tr. 23) and then relied on the vocational expert's opinion that was based on the same reading of Dr. Ali's opinion. Tr. 79.

* * *

/ / /

---

[2]  Plaintiff erroneously refers to Dr. Thakur as "Dr. Thaku."

7

> Dr. Ali's opinion was very clear. Ms. Sanchez's maximum ability to stand AND walk was four to six hours total out of an eight-hour workday. He did not say that she could stand and/or walk for four to six hours *each* out of an eight-hour workday or that she could do so for six hours. The ALJ first misread Dr. Ali's opinion as providing that she could stand *and/or* walk four to six hours (each) out of an eight-hour day (Tr. 30). The ALJ then concluded in the RFC assessment that Ms. Sanchez could stand and/or walk for six hours (each) out of an eight-hour day but sit for only four to six hours. Tr. 23. The VE's testimony was based on yet a different version of Ms. Sanchez's RFC and also was different than Dr. Ali's actual opinion.

3. Disposition

Dr. Ali prepared a report following a comprehensive consultative examination conducted on May 29, 2015. See CAR 357-60 (Exhibit 4F). As to plaintiff's ability to stand and walk, Dr. Ali opined: "Maximum standing and walking capacity: 4 to 6 hours." Id. at 360. In support of this opinion, which the ALJ gave great weight, Dr. Ali cited the following objective findings:

> GENERAL APPEARANCE & OBSERVATIONS: The claimant was able to walk into the exam room without assistance. She was sitting comfortably. She was getting on and off the exam table without difficulty. She was able to take her shoes off and on without difficulty. Claimant was speaking clearly and in full sentences.
>
> * * *
>
> COORDINATION/GAIT: Able to do the heel/to walk. Able to squat.
>
> ASSISTIVE DEVICE: None.
>
> * * *
>
> STRAIGHT LEG RAISE: Negative.
>
> GENERAL FINDINGS: Exam is positive for a tortous vericose vein on her right calf. II did not notice any tenderness or erythema. Positive for tinel signs bilaterally. She has a limited lumbar range of motion due to poor effort and a limited hip and knee range of motion due to body habitus. . . .

CAR 358-60.

Plaintiff argues the ALJ's conclusion she could "stand and/or walk" misstates the doctor's opinion plaintiff could "stand and walk." This argument is unpersuasive. "Stand and walk" contemplates the time plaintiff could spend doing these activities in combination. At each extreme of the scale, plaintiff is either standing or walking the entire time. As a result, "stand and

8

walk" can mean 100% standing and no walking as well as no standing and 100% walking. Thus, the ALJ's finding plaintiff could "stand and/or walk" accurately describes the full range of Dr. Ali's opinion.

**B.    Dr. Thakur**

Plaintiff argues the ALJ erred by failing to evaluate opinions rendered by treating source, Dr. Thakur. According to plaintiff:

> The ALJ's decision also failed to evaluate or discuss Dr. Thaku's opinions as far as Ms. Sanchez's limitations. Dr. Thaku was Ms. Sanchez's treating vascular medicine specialist and also is board certified by the American Board of Venous & Lymphatic Medicine. Tr. 513-542. Exhibit 15F consists of Dr. Thaku's progress notes/testing/and even surgical procedure for the period from October 28, 2015 through January 18, 2017. During the entire time period, Dr. Thaku was assigning Ms. Sanchez limitations. The ALJ never discussed Dr. Thaku's opinion as to Ms. Sanchez's limitations and did not explain why he was rejecting the opinions from a board-certified specialist in the relevant field of medicine. Due to the ALJ's failure to articulate specific and legitimate reasons for rejecting Dr. Thaku's opinion, Ms. Sanchez respectfully requests reversal and remand.
>
> * * *
>
> From the very first office visit, Dr. Thaku's progress notes reveal that he was advising her as to conservative measures she needed to be following. On October 28, 2015, Dr. Thaku told Ms. Sanchez that she needed to continue conservative treatment including, among other limitations, leg elevation and avoiding excess standing. Tr. 517. She was given the same instructions on November 11, 2015 (Tr. 521); January 28, 2016 (Tr. 529); and August 10, 2016 (Tr. 549). The progress note from January 18, 2017 is missing two pages and only includes page1-3 of 5 total pages so is incomplete. Given her description of her current status on that date, it is likely she was given the same instructions. Dr. Thaku is a specialist in the this [sic] area of medicine. He advised Ms. Sanchez to elevate her legs whenever possible and to avoid excess standing. The ALJ did not explain why he was not accepting these limitations, even though they were assigned by a specialist in the relevant medical field who also was a treating provider. The ALJ did not admit that Dr. Thaku had even issued the opinions. The ALJ's lack of analysis failed to comply with binding Ninth Circuit law, requiring the ALJ to articulate specific and legitimate reasons for discounting a treating opinion. The ALJ did not even acknowledge the opinions, let alone offer any reasons. The errors were not harmless because the VE testified that even a requirement to elevate the legs up to 25% of the workday would preclude the ability to perform her past work and the cited occupations. Tr. 86. The need to avoid excess standing is inconsistent with the ALJ's finding that she could perform six hours of standing and six hours of walking total in an eight-hour day (meaning that she could stand/walk for a full eight-hour work day).

9

The ALJ's errors are not harmless. Due to the ALJ's failure to comply with binding Ninth Circuit case law and failure to analyze or provide specific and legitimate reasons for rejecting Dr. Thaku's opinion, Ms. Sanchez respectfully requests reversal and remand for proper analysis and proper consideration of the medical opinions of record.

The record contains medical records from Dr. Thakur covering the period from October 28, 2015, through January 18, 2017. <u>See</u> CAR 513-553 (Exhibit 15F). According to plaintiff, "During the entire time period, Dr. Thaku was assigning Ms. Sanchez limitations." In particular, plaintiff references a limitation to "leg elevation and avoiding excess standing." Plaintiff concludes: "The need to avoid excess standing is inconsistent with the ALJ's finding that she could perform six hours of standing and six hours of walking total in an eight-hour day (meaning that she could stand/walk for a full eight hour work day)."

The court finds no error. First, for the reasons discussed above, the court does not agree with plaintiff's characterization of the ALJ's finding regarding her ability to stand and/or walk during an eight-hour workday. In short, the ALJ did <u>not</u> conclude plaintiff could stand/walk "for a full eight-hour work day." To the contrary, and as plainly stated in the ALJ's decision, plaintiff retained the ability to stand and/or walk for up to six hours during the course of a normal workday. Second, the doctor's opinion that plaintiff could not engage in "excessive standing" is consistent with the ALJ's conclusion plaintiff could stand and/or walk in some combination for up to six hours. In this regard, the court notes neither Dr. Thakur nor plaintiff provide any guidance as to what would constitute "excessive" standing.

### C. Dr. Purewal and PA Anslinger

#### 1. The ALJ's Analysis

At Step 4, the ALJ evaluated opinions offered by treating sources, Dr. Purewal and PA Anslinger. The ALJ stated:

> On November 20, 2015, Praghjit Purewal, M.D., and/or Mr. David Anslinger, Physician Assistant (PA), opined that the claimant's pain would frequently interfere with her attention and concentration. She was also noted to have anxiety. She would be incapable of even low stress jobs. The claimant could walk ½ block without rest. She could sit more than 2 hours, at least six hours in an 8-hour workday. The claimant could stand and/or walk less than two hours, 5 minutes at a time. She would need to be able to shift positions at will and would need to take unscheduled breaks. The claimant did not require leg elevation with

> prolonged sitting. She would occasionally need a cane or other assistive device. The claimant should occasionally lift and carry less than 10 pounds. She should never twist, stoop, crouch, or climb ladders, but could rarely climb stairs. She was limited to 50% bilateral handling and fingering and never reaching. The claimant would be absent from work 10-15 days per month (Ex. 12F).
>
> \* \* \*
>
> The undersigned gives little weight to these opinions, as it is inconsistent with the objective medical evidence and is an overestimate of the severity of the individual's restrictions/limitations. The objective evidence indicated that the claimant maintained normal gait, sensation, coordination, and Range of Motion (ROM) with no objective evidence of atrophy or weakness (Ex. 2F/34, 3F/16, 14F/4, 14F/20-21, 15F/30, and 17F/86-87). Moreover, the claimant reported that she could walk for eight or more blocks before having leg pain (Ex. 15F/2-3). She also had normal extremity strength, including handgrip, with no swelling or deformities in her extremities (Ex. 16F/167 and 16F/244-245).

CAR 30-31.

With respect to the opinion that plaintiff cannot perform even low-stress jobs, the ALJ observed:

> While the claimant appeared anxious at times (Ex. 17F/76 and 17F/87), she also presented as alert and oriented (Ex. 14F/3, 14F/8, and 17F/37); pleasant (Ex. 17F/7); cooperative (Ex. 14F/3 and 14F/8); and had normal speech, short term and long-term memory, indicating no mental deficits (Ex. 14F/3 and 14F/8).

Id. at 31.

2. <u>Plaintiff's Contentions</u>

Plaintiff argues:

> Although the ALJ did generally address the opinions of Dr. Purewal and David Anslinger, P.A, the ALJ failed to articulate specific and legitimate reasons for rejecting the opinions. As explained below, the ALJ's rationale failed to take into account the objective evidence and findings supporting the limitations. Instead, the ALJ appears to have culled through some of the records to find normal findings without explaining the rationale for rejecting the abnormal findings. On these grounds, Ms. Sanchez respectfully requests that this matter be remanded for either award of benefits or for additional proceedings.
>
> \* \* \*
>
> Turning to the ALJ's reasoning, the ALJ rejected the opinion because the opinion was allegedly *inconsistent with the objective evidence and was an overestimate of the individual's restrictions/limitations*. Tr. 31. The ALJ pointed to normal "objective" findings but as explained below, the ALJ's analysis was insufficient to meet the requirement to articulate specific and legitimate reasons.

Dr. Purewal's diagnoses were fibromyalgia and venous insufficiency. Tr. 444. As explained below, the ALJ's analysis was inadequate as to Dr. Purewal's opinion. As far as the fibromyalgia, the ALJ failed to analyze Ms. Sanchez's fibromyalgia as required by SSR 12-2p. *See* Social Security Ruling, ("SSR") 12-2p, 77 FR 43640-01 (July 25, 2012). The Ninth Circuit addressed treatment of symptom testimony in fibromyalgia cases in *Revels v. Berryhill*, 874 F.3d 648 (9th Cir. 2017). At the outset, the court noted that "[f]or a long time, fibromyalgia was 'poorly understood within much of the medical community.' " *Id*. at 656. Fibromyalgia is unusual in that patients have normal strength, sensation, and reflexes; their joints appear normal; and " '[t]here is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain.' " *Revels,* 874 F.3d at 656. In *Revels*, the ALJ determined that the claimant's "testimony was undercut by the lack of 'objective findings' supporting her claims of severe pain." *Id.* at 666. The ALJ cited to normal findings as far as x-rays and MRIs and even cited to medical records showing normal muscle strength, tone, and stability, and range of motion. The Ninth Circuit held that the ALJ erred in discounting the claimant's testimony (as well as testimony provided by medical providers) because the ALJ failed to "consider" the claimant's "testimony in light of her fibromyalgia diagnosis." *Id.*

Just as in *Revels*, the ALJ's reliance on the normal objective findings in Ms. Sanchez's case was also in error. The ALJ failed to meaningfully understand the nature of Ms. Sanchez's fibromyalgia and failed to analyze the impairment as required by SSR 12-2p. Under Ninth Circuit case law, the ALJ erred in rejecting the opinion and Ms. Sanchez's symptoms due to the alleged lack of objective findings.

As far as the venous insufficiency, the records are filled with abnormal findings and procedures relative to that diagnosis. The ALJ did not explain why some findings mattered and others did not. In March 2015, Ms. Sanchez was seen at the California Vein and Vascular Institute. Tr. 399-405. Examination revealed varicose veins in bilateral lower extremity. The right calf was visually larger than the left. She underwent an abnormal lower extremity venous Doppler. Progress notes dated April 16, 2015 revealed varicose veins and CEAP class-3-Edema. Tr. 397-398. Ms. Sanchez was seen on October 3, 2015 at Lathrop Urgent Care. Tr. 1083. Examination revealed swelling of bilateral lower extremity and the thenar prominence of her hand was exquisitely tender. Ms. Sanchez was seen from October 2015 through November 2015 by Dr. Thakur. Tr. 513-525. Examination revealed she had ropy varicose veins below the knee and over the medial legs. Ms. Sanchez also had painful telangiectasis bilaterally and edema bilaterally. *Id.* Her ultrasound showed venous reflux/insufficiency and radiofrequency ablation of the right great saphenous vein was recommended. Tr. 519-525.

On January 26, 2016, Ms. Sanchez underwent an EMG and nerve conduction study of the upper extremity. The study was abnormal and the findings were indicative of mononeuritis multiplex. *Id.* Ms. Sanchez was treated by Dr. Sidhu on February 1, 2016. Tr. 1103. Examination revealed mild swelling around the carpal tunnel with mild tenderness.

Progress notes from January 2016 through April 2016 revealed treatment by Dr. Thakur. Tr. 526-542. On March 2, 2016, she underwent an endovenous radiofrequency ablation of the right great saphenous veins of the lower extremity. Tr. 532-538. Ms. Sanchez was seen on April 11, 2016 by Dr. Sidhu. Tr. 1075-1076. Examination revealed diffuse tenderness over the wrist. Her nerve conduction study showed

mononeuritis and she was diagnosed with carpal tunnel syndrome, right upper limb. *Id.* As of May 6, 2016, examination revealed a small firm mass over the palm of her left hand which was most likely a dupuytrens contracture. Tr. 1073-1074. In May 2016, examination by Dr. Prasad revealed her sensory capacity was decreased in a stocking glove pattern. Tr. 496-498. On June 10, 2016, she underwent an EMG and nerve conduction study of the lower extremity. Tr. 499-502. The study was abnormal and indicative of sensorimotor axonal neuropathy. *Id*. Ms. Sanchez was seen on August 10, 2016. Tr. 506-507. Her examination remained unchanged and she was diagnosed with sensorimotor polyneuropathy and cervical radiculopathy. *Id*. From August 2016 through January 2017, Dr. Thakur continued to treat Ms. Sanchez. Tr. 543-553. On August 10, 2016, a vein ultrasound and examination revealed varicose veins that were present on the bilateral legs over the anterior and posterior legs and painful telanglectasia over the bilateral legs. Tr. 543-546. There was edema present over both legs and a raised mass over the left leg measuring about three centimeters.

The ALJ's description of supposedly normal findings failed to acknowledge the many findings described above that were *abnormal*, especially pertaining to the vascular condition. Not all conditions have the same outward "objective" manifestation. For example, someone who has migraine headaches will not have limited range of motion of the lumbar spine. Vascular disorders are not established based on limited range of motion. The ALJ was required to consider the entire record - not just select evidence. The ALJ failed to explain why the above evidence was insufficient to support Dr. Purewal's opinion. Dr. Purewal's opinion was superficially rejected, without meaningful analysis. Due to the ALJ's failure to articulate specific and legitimate reasons for rejecting Dr. Purewal and his physician assistant's opinions, Ms. Sanchez respectfully requests reversal and remand for proper analysis of the opinion evidence of record.

3. <u>Disposition</u>

Plaintiff contends the ALJ erred by failing to consider her fibromyalgia pursuant to Social Security Ruling 12-2p. The court does not agree. Plaintiff's citation to <u>Revels</u> is misplaced because that case involved consideration of a claimant's credibility whereas this case involves plaintiff attack on the ALJ's evaluation of the medical opinion evidence. In credibility analysis cases, plaintiff is correct that the ALJ may not reject pain testimony simply because it is unsupported by objective medical evidence. <u>See</u> <u>Bunnell</u>, 947 F.2d at 347-48; <u>Smolen</u>, 80 F.3d at 1282. Where, as here, plaintiff assigns error to the ALJ's evaluation of the medical opinion evidence, the ALJ properly considers whether the opinion at issue is consistent with the objective medical evidence. <u>See Lester</u>, 81 F.3d at 831. Moreover, also as here, where there is a conflict in the opinion evidence, the ALJ may resolve the conflict. <u>See Andrews</u>, 53 F.3d at 1041. Indeed, the ALJ need not accept even a treating source opinion that is unsupported. <u>See Meanel</u> 172 F.3d

13

at 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

## IV. CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Plaintiff's motion for summary judgment (ECF No. 16) be denied;

2. Defendant's cross-motion for summary judgment (ECF No. 17) be granted; and

3. The Commissioner's final decision be affirmed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 6, 2019

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE